IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-250-RJ

DARIUS CAMPBELL,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on Claimant's brief and Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). [DE-14, -20]. Claimant Darius Campbell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Plaintiff filed a response to Defendant's motion, [DE-22], the time for further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Acting Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI on December 19, 2018, alleging disability beginning December 1, 2017. (R. 16, 260–74). Both claims were denied initially and upon reconsideration. (R. 106–51). A hearing before the Administrative Law Judge ("ALJ") was held on September 23, 2021, at which Claimant,

represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 61–105). On February 10, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 13–36). On April 26, 2022, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to explain why an accommodation for leg elevation was not included in the RFC assessment. Pl.'s Br. [DE-14] at 11–16.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since December 1, 2017, the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the severe impairments of obesity; degenerative joint disease, bilateral knees; tibial and peroneal tendinitis, enthesopathy, bilateral ankles; and chronic obstructive pulmonary disease. (R. 19). The ALJ also found Claimant's sleep apnea, gastroesophageal reflux disease, hypertension, hyperlipidemia, hypogonadism, vitamin D deficiency, allergic reaction, rhinitis, cerumen impaction, diabetes, cataracts, pes planus, lower extremity edema, paresthesia, venous stasis, bilateral trigger thumb, adjustment disorder, depression, and anxiety to be non-severe and that Claimant's abdominal pain, back ache, and low back pain were not medically determinable impairments. (R. 19–20). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–22). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> The claimant can sit for six hours out of an eight-hour workday; stand and/or walk for six hours out of an eight-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently; and can push and pull in accordance with those lifting

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

and carrying limitations, but can only frequently push and pull with the left lower extremity. The claimant can never climb ladders, scaffolds, or ropes; can occasionally climb ramps and stairs; occasionally balance as that term is defined in the Dictionary of Occupational Titles; and occasionally kneel, crouch, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, humidity, and extremes of temperature; must avoid even moderate exposure to hazards such as unprotected heights and dangerous machinery; and must have the flexibility to alternate between sitting and standing every 30 minutes.

(R. 22–29). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence of record. (R. 23). At step four, the ALJ concluded Claimant was unable to perform his past relevant work as a short order cook, line cook, construction worker, school cafeteria cook, or maintenance worker. (R. 29–30). Nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 30–31).

## V. DISCUSSION

Claimant contends that due to swelling in his lower extremities he must elevate his legs throughout the day, and the ALJ erred by failing to explain why he did not include an accommodation for leg elevation in the RFC. Pl.'s Br. [DE-14] at 11–16. Defendant counters that the ALJ adequately considered Claimant's alleged need to elevate his legs given the facts of the case. Def.'s Mem. [DE-21] at 13–20.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184,

5

at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Claimant testified that he experiences swelling from his feet and ankles to his calf and in his knees. (R. 76–79). Standing for thirty minutes or walking increases the swelling so Claimant sits on the sofa or does something similar to take the pressure off his foot. (R. 88–89). When asked how much of the day Claimant spent either lying down or with his foot elevated, he testified as follows:

> I try keeping it elevated, because -- I would say about 30 minutes. And I try not to sit too much, because, you know, I try to do what my doctors try to say, try to be active, and stuff like that. She said -- because she said my weight is -- she want me to lose weight, because I'm almost like a 300 pounds, and she don't want me to be more than that. So she said I've got to be somewhat active. I try to do what she do, but I'm limited to certain things. So I keep a post on that right there. I can't even walk a whole full lap or anything like that.

(R. 89). Claimant also reported swelling in his feet, ankles, and knees in function reports submitted to the agency. (R. 312, 323). Treatment notes in the record also indicate Claimant experienced various degrees of swelling in his lower extremities throughout the relevant period. (R. 452, 456, 467–70, 519–20, 543, 545, 547–48, 550, 556, 561–62, 572–73, 593, 599–601, 605, 714, 781, 791, 795, 802, 813, 820). Claimant reported to his treatment providers that elevating his legs reduced the swelling. (R. 574, 599). Claimant's primary care provider opined on September 27, 2020, that

6

his ability to push and pull with his right leg and to squat, run, stoop, crouch, and perform other unspecified postural maneuvers was limited due to edema of his right leg and ankles. (R. 772). On March 31, 2021, Claimant's foot and ankle specialist advised him to, among other things, "rest and elevate feet as much as possible next few weeks." (R. 798). At a follow up visit on May 7, 2021, Claimant was advised to use unna boots for three to four days, wear ankle braces and compression stockings, and "elevate feet as much as possible." (R. 803).

The ALJ first considered Claimant's lower extremity edema at step two and assessed it, along with several other impairments, as non-severe. (R. 19). The ALJ generally reasoned that "claimant received either brief, routine, conservative treatment, or, at times, more involved treatment, but in either case, there is no evidence that these impairments resulted in lasting sequelae," and Claimant "did not allege any of these impairments to be disabling upon application and did not offer any testimony concerning them at the hearing of this matter other than brief mention of trigger thumbs, sleep apnea, and very brief mention of depression." *Id.* Although Claimant did not challenge the ALJ's determination that his lower leg edema was non-severe, the ALJ was incorrect in stating that Claimant did not offer testimony regarding the swelling from his feet to his knees, as well as his practice of elevating his legs to reduce the swelling. (R. 76–79, 88–89). However, the ALJ's consideration of Claimant's lower extremity edema in formulating the RFC makes any step two error harmless. *See Watts v. Comm'r of Soc. Sec.*, No. 1:21-CV-00176-RJC, 2023 WL 160236, at *2 (W.D.N.C. Jan. 11, 2023) ("The failure to find an alleged impairment severe at step two is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis.") (quoting *Harrold v. Berryhill*, No. 5:16-CV-221-FDW-DCK, 2018 WL 1163264, at *6 (W.D.N.C. Feb. 13, 2018); *Tremble v. Colvin*, No. 2:15–CV–00001–D, 2016 WL 484214, at *4 (E.D.N.C. Jan. 20, 2016)).

7

Turning to the ALJ's RFC discussion, the ALJ noted Claimant's testimony regarding the swelling in his feet and ankles and that he would elevate his feet for approximately thirty minutes at a time during the day. (R. 22–23). The ALJ also discussed Claimant's treatment for left knee pain and swelling in August 2017, and an MRI that revealed swelling of the left knee in April 2018, but found that after a left knee arthroscopy in June 2018, Claimant's pain improved, as did his knee swelling. (R. 23, 452, 456, 556, 706).

Next, the ALJ discussed Claimant's foot impairments and the swelling in his right ankle and lower leg, including an x-ray that showed ankle edema, but noted that Claimant demonstrated full range of motion in the ankle, no pain with inversion or eversion, normal gait and station, and intact sensation and that medication improved his functioning. (R. 23–24, 513–17, 714). The ALJ acknowledged that Claimant demonstrated edema in May 2019, but had otherwise normal gait and motor function, he was diagnosed with posterior tibial tendinitis, and he was given foot orthosis. (R. 23, 560–62, 672–75). The ALJ noted that in June 2019, Claimant reported significant improvement in his pain to a 1 out of 10 with medication and use of compression stockings and a TENS unit, and his overall function was improved. (R. 24, 421). Although Claimant demonstrated edema again in March 2020, the ALJ observed Claimant admitted to not wearing his compression socks, (R. 592 "Patient has been instructed to wear compression socks, but fails to do so."). (R. 24, 592–93). The ALJ documented that Claimant's cardiology workup to investigate the cause of his edema was normal and that he was advised to continue using compression stockings and to elevate his legs, and Claimant reported in July 2020 that his leg edema had resolved with a use of a diuretic. (R. 24, 572–77, 763). In March 2021, Claimant returned to the podiatrist with complaints of foot and ankle swelling, and the ALJ noted that Claimant was provided orthosis to treat his tendinitis and that the physician recommended Claimant elevate his feet. (R. 24, 794–99).

8

The ALJ explained that due to Claimant's knee and ankle dysfunction, he required the flexibility to alternate between sitting and standing in order to avoid prolonged standing. (R. 25). While the ALJ did not specifically explain why an accommodation for leg elevation was not included in the RFC, it is apparent from the ALJ's RFC discussion that he did not ignore Claimant's edema and leg elevation, because he mentioned both throughout the discussion, but rather determined that an accommodation was unnecessary for Claimant to perform a reduced range of light work. *See Newsome v. Kijakazi*, No. 2:21-CV-46-FL, 2023 WL 2322969, at *5 (E.D.N.C. Jan. 18, 2023) (finding ALJ's discussion of Claimant's testimony and the treatment records related to edema and leg elevation was sufficient to trace the ALJ's logic in not including a requirement to elevate legs), *recommendation adopted*, 2023 WL 2315426 (E.D.N.C. Mar. 1, 2023). Claimant's physicians at times recommended that Claimant elevate his legs, but there are no opinions that suggested this was a permanent restriction or that he must do so with more frequency than could be accomplished within the regularly scheduled work breaks. *See Hope v. Kijakazi*, No. 1:20-CV-1146, 2022 WL 463241, at *7 (M.D.N.C. Feb. 15, 2022) (finding the ALJ did not err in failing to account for the plaintiff's need to elevate his legs to reduce edema where nothing in the treatment notes indicated the plaintiff's treatment provider intended leg elevation to be a full-time, long-term directive, and the treatment records reflect that the recommended leg elevation was when the plaintiff had increased symptoms), *recommendation adopted*, Judgment [DE-20] (M.D.N.C. Mar. 2, 2022); *see also Patterson v. Kijakazi*, No. 1:20-CV-1030, 2022 WL 103884, at *9 (M.D.N.C. Jan. 10, 2022) ("[A] recommendation that a patient undertake certain ameliorative measures does not equate to a physical restriction or a judgment about what Plaintiff can still do despite her impairments.") (citations omitted), *recommendation adopted*, 2022 WL 904467 (M.D.N.C. Feb. 24, 2022), *aff'd,* No. 22-1325, 2023 WL 2136367 (4th Cir. Feb. 21, 2023). Furthermore,

Claimant's testimony was that he tried to keep his foot elevated "about 30 minutes" and that he tried not to sit too much because his doctors recommended he try to be active. (R. 89). This is not necessarily inconsistent with the RFC, where Claimant did not testify as to how frequently he elevated his legs. *See Bell v. Saul*, No. 5:19-CV-00021-D, 2020 WL 961424, at *5 (E.D.N.C. Jan. 21, 2020) (finding no error in failure to account for need to elevate legs in the RFC where the claimant did not testify that she needed to elevate her legs at will and "the frequency and duration of Bell's leg elevation could arguably be done during lunch or other break periods, or off-work time, so it would not interfere with her work hours."), *recommendation adopted*, 2020 WL 968359 (E.D.N.C. Feb. 27, 2020). The ALJ's discussion is sufficient for the court to trace the ALJ's reasoning in not including a limitation to elevating Claimant's legs in the RFC, and the decision is supported by substantial evidence. *See Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015) ("[T]he fact that the ALJ could have offered a more thorough explanation for his decision does not change our conclusion that substantial evidence in the record supports that decision."). Accordingly, the ALJ did not err in addressing Claimant's asserted need to elevate his legs.

## VI. CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Acting Commissioner is affirmed.

So ordered, this the 25th day of September 2023.

Robert B. Jones, Jr.
United States Magistrate Judge